UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

SALVATORE DISTEFANO,

                              Plaintiff,                 **MEMORANDUM & ORDER**
                                                         11-CV-1125 (MKB)

            v.

GIUSEPPE SEDITA, CITY OF NEW YORK,
OFFICER MARTINEZ and JOHN DOE 1
through 3, in their individual capacities,

                              Defendants.

----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Salvatore DiStefano brought the above-captioned action against Defendants

Giuseppe Sedita, the City of New York, Officer Martinez and John Doe 1 through 3 alleging

false arrest, malicious prosecution, abuse of process and conspiracy claims in violation of the

Fourth, Fifth and Fourteenth Amendments and New York common law.  At oral argument,

Plaintiff clarified that he only wished to proceed with his false arrest and malicious prosecution

claims pursuant to 42 U.S.C. § 1983 against Officer Martinez, and his malicious prosecution and

abuse of process state law claims against Sedita.  Defendants moved for summary judgment on

all claims.  For the reasons set forth below, the Courts grants Officer Martinez's motion for

summary judgment as to the § 1983 false arrest and malicious prosecution claims.  The Court

declines to exercise supplemental jurisdiction over Plaintiff's malicious prosecution and abuse of

process state law claims against Sedita and dismisses those claims without prejudice.

## I.   Background

On February 9, 2010, Sedita was involved in an altercation with Plaintiff and called 911. (Def. Sedita 56.1 ¶ 9; Pl. Opp'n 56.1 ¶ 9.)  The parties dispute the substance of the 911 call.  The 911 dispatcher recorded that Sedita requested police presence because Plaintiff had allegedly threatened Sedita with a knife.  (Pl. Opp'n 56.1 ¶ 15; Wotorson Aff. Ex. 3.)  Sedita denies having told the 911 dispatcher that Plaintiff had a knife or what appeared to be a knife.  (Pl. Opp'n 56.1 ¶ 15; Transcript of Deposition of Giuseppe Sedita ("Sedita Dep."), dated Apr. 25, 2012, at 23:4–11, 16–21, annexed to the Wotorson Aff. as Ex. 12.)  Sedita believes he told the 911 dispatcher that he was scared and that Plaintiff had some object in his right hand.  (Sedita Dep. at 23:10–18.)

At approximately 6:17 p.m., Officer Martinez received a radio run informing him of a dispute involving a knife at the intersection of 18th Avenue and Francis Lewis Boulevard in Queens, New York.  (Defendants City of New York and Officer Martinez ("Defs.") 56.1 ¶ 4; Pl. Opp'n 56.1 ¶ 4.)  The perpetrator was described as a thin white male, of medium height, wearing a black jacket and jeans and driving a white truck.  (Defs. 56.1 ¶ 5; Pl. Opp'n 56.1 ¶ 5.)  Officer Martinez responded to the radio run and stopped Plaintiff at the specified intersection.  (Defs. 56.1 ¶¶ 8–9; Pl. Opp'n 56.1 ¶¶ 8–9.)  Plaintiff was wearing blue jeans and a black leather jacket and was driving a white SUV.  (Defs. 56.1 ¶ 10; Pl. Opp'n 56.1 ¶ 10.)  Patrol Supervisor, Sergeant Glenn Termine, also responded to the radio run.  (Defs. 56.1 ¶ 11; Pl. Opp'n 56.1 ¶ 11.)  Sergeant Termine wore a standard blue New York City Police Department ("NYPD") uniform with stripes on his sleeve to designate his rank as Sergeant.  (Defs. 56.1 ¶ 12; Pl. Opp'n 56.1 ¶ 12.)

According to Officer Martinez, he stopped Plaintiff. (Defs. 56.1 ¶ 14.)  The parties agree that this stop included a pat down or frisk of Plaintiff by Officer Martinez. (Pl. Opp'n 56.1 ¶ 14; Transcript of Deposition of Edwin Martinez ("Martinez Dep.") 41:12–14, dated Apr. 12, 2011, annexed to Wotorson Aff. as Ex. 13.)  No instrument that could be considered a weapon was found during the initial pat down or frisk.  (Martinez Dep. at 42:7–13.)  Officer Martinez, together with Sergeant Termine, then spoke with Sedita.  (*Id.* at 41:20–24; Defs. 56.1 ¶ 17; Pl. Opp'n 56.1 ¶ 17.)  The parties dispute the content of this conversation.

According to Officer Martinez, Sedita initially told him that Plaintiff approached Sedita while holding something in his hand in a threatening manner.  (Defs. 56.1 ¶ 15.)  Sedita believed this to be a knife, although possibly it was a pen.  (*Id.*)  Sedita does not recall what he told the officers other than that Plaintiff threatened that "I'm gonna get you guys" while holding an unknown object in his hand.  (*Id.*; Def. Sedita 56.1 ¶ 17.)  Plaintiff asserts that Sedita never told Officer Martinez that Plaintiff had a knife and never told any police officer that Plaintiff threatened Sedita with a pen or knife. [1]  (Pl. Opp'n 56.1 ¶ 15) It is undisputed that Plaintiff did not overhear any of Sedita's conversation with Officer Martinez and Sergeant Termine.  (Def. Sedita 56.1 ¶ 15; Pl. Opp'n 56.1 ¶ 15.)

---

[1]  Sedita's testimony is quite difficult to follow.  Sedita vacillates between doubt and certainty as to whether he told any officer that Plaintiff had a knife, threatened him with a knife, or threatened him with a pen.  *See* Sedita Dep. at 24:24–25, 25:1–2 ("Q.  At any point did you tell the cops that you thought [Plaintiff] might of had a knife? A.  I don't remember."); *id.* at 25:3–9 ("Q.  At any point did you tell the cops that Mr. Sedita threatened you with a pen? A. No.  Q.  Are you certain?  A.  I'm not sure sir.  My Adrenalin is pumping, I'm afraid . . . .   Q.  I just want to find out, did you tell the cops that [Plaintiff] threatened you with a pen?  A.  I don't remember."); *id.* at 26:23–25 ("At any point . . . did you say, or imply to the cops that [Plaintiff] had a knife on him?  A.  No, I don't think I ever said that."); *id.* at 78:14– 16 ("Q.  Did you ever tell the police officer that it could have been a pen, it could have been a knife[?]  A. I think so, yes.") *id.* at 23:12–14 ("Q.  Did you tell them your coworker had some object in his hand, but you wasn't [sic] sure what it was?  A.  I think that's what I told them.").

3

After speaking with Sedita, Officer Martinez searched Plaintiff's person and recovered an ink pen from the right pocket of Plaintiff's coat.  (Defs. 56.1 ¶ 19; Pl. Opp'n 56.1 ¶19.)  Officer Martinez does not recall the number of searches he performed.  (Martinez Dep. at 61:10–25, 62:1–5.)  Upon finding the ink pen, Officer Martinez was directed by a high-ranking officer to place Plaintiff under arrest.  (Defs. 56.1 ¶ 20.)  Plaintiff asserts that the pen was found only after he was searched three times.  (Pl. Opp'n 56.1 ¶19.)  Plaintiff further asserts that after the ink pen was recovered, he heard another officer tell Officer Martinez to place Plaintiff under arrest.  (Pl. Opp'n 56.1 ¶ 20; Transcript of Deposition of Salvatore DiStefano ("DiStefano Dep."), dated Apr. 4, 2012, at 88:24–25, 89:1–2, annexed to Wotorson Aff. as Ex. 11.)

At some point prior to the arrest, Officer Martinez recalls being told that there was an ongoing conflict between Plaintiff and Sedita.  (Defs. 56.1 ¶ 17; Pl. Opp'n 56.1 ¶ 17.)  Plaintiff claims that he informed Officer Martinez and the high-ranking officer that he and Sedita were former co-workers, that Sedita threatened to kill him earlier that year, in January 2012, and that Sedita was arrested as a result of the earlier conflict.  (Defs. 56.1 ¶ 18; Pl. Opp'n 56.1 ¶ 18; Pl. Opp'n Mem. 7.)  Plaintiff also claims that he told Officer Martinez and his partner that Sedita's actions that day were retaliatory.  (Pl. Aff. ¶ 6.)

Officer Martinez arrested Plaintiff for menacing in the second degree, in violation of New York Penal Law 120.14(1), and criminal possession of a weapon in the fourth degree, in violation of New York Penal Law 265.01(2).  (Krasnow Decl., Ex. F, "Arrest Report".)  After Plaintiff's arrest, Officer Martinez spoke to an assistant district attorney ("ADA") from the Queens District Attorney's Office for the purpose of drafting the criminal complaint.  (Defs. 56.1 ¶ 24; Pl. Opp'n 56.1 ¶ 24.)  Officer Martinez provided the ADA with the information he obtained from Sedita, but did not determine the charges to be included in the criminal complaint.  (Defs.

56.1 ¶ 25; Pl. Opp'n 56.1 ¶ 25.)  Officer Martinez signed the criminal complaint on the night of Plaintiff's arrest, February 9, 2010.  (Defs. 56.1 ¶ 26; Pl. Opp'n 56.1 ¶ 26.)  The criminal complaint stated that Sedita informed Officer Martinez that Plaintiff held a pen in his hand and threatened Sedita by stating, "I'm going to get you."  (Krasnow Decl., Ex. H.)  Plaintiff was arraigned in the early hours of February 10, 2010, and was released on his own recognizance. (Defs. 56.1 ¶ 23; Pl. Opp'n 56.1 ¶ 23.)

On February 24, 2010, Sedita signed a supporting statement, titled "supporting deposition," in which Sedita stated that he reviewed the criminal complaint and that the facts stated therein, as provided by Officer Martinez, were true. [2]  (Defs. 56.1 ¶ 28; Krasnow Decl., Ex. H.)  The criminal complaint ultimately charged Plaintiff with menacing in the second degree and harassment in the second degree, in violation of New York Penal Law 240.26(1).  (Wotorson Aff., Ex. 9.)  On or about February 15, 2011, the charges against Plaintiff were dismissed pursuant to the speedy trial provision of New York Criminal Procedure Law § 30.30.  (Krasnow Decl., Ex. I; Wotorson Aff., Ex. 10.)

## II.  Discussion

### a.  Standard of Review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013); *Kwong v. Bloomberg*, 723 F.3d 160, 164–65 (2d Cir. 2013); *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012); *Doninger v. Niehoff*,

---

[2]  Although in his 56.1 statement to the Court Plaintiff denies that Sedita signed a supporting statement, and alleges that said statement was not disclosed during discovery, (Pl. Opp'n 56.1 ¶ 28), at oral argument Plaintiff conceded the authenticity and receipt of this document and did not contest its admissibility.

642 F.3d 334, 344 (2d Cir. 2011).  The role of the court is not "to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial."

*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A genuine issue of fact exists when

there is sufficient "evidence on which the jury could reasonably find for the plaintiff."

*Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to

defeat summary judgment; "there must be evidence on which the jury could reasonably find for

the plaintiff."  *Id.*  The court's function is to decide "whether, after resolving all ambiguities and

drawing all inferences in favor of the non-moving party, a rational juror could find in favor of

that party."  *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b.  Plaintiff's 42 U.S.C. § 1983 Claims

Plaintiff has asserted claims of false arrest and malicious prosecution against Officer

Martinez.  As discussed below, the Court finds that Plaintiff has failed to demonstrate that there

is a genuine dispute of material fact as to his false arrest and malicious prosecution claims.

### i.  False Arrest

A § 1983 false arrest claim "rest[s] on the Fourth Amendment right of an individual to be

free from unreasonable seizures, including arrest without probable cause . . . ."  *Weyant v. Okst*,

101 F.3d 845, 852 (2d Cir. 1996).  "The elements of false arrest require the plaintiff to establish

that '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the

confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was

not otherwise privileged.'"  *Bernshtein v. City of New York*, 496 F. App'x 140, 141 (2d Cir. 2012)

(quoting *Weyant*, 101 F.3d at 853); *see also Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir.

2003).  Probable cause allows an officer to confine an individual, therefore, "probable cause is a

6

complete defense to a claim of false arrest." *Smith v. Tobon*, 529 F. App'x 36 (2d Cir. 2013)

(citing *Williams v. Town of Greenburgh*, 535 F.3d 71, 78–79 (2d Cir. 2008)); *see also Ackerson*

*v. City of White Plains*, 702 F.3d 15, 21 (2d Cir. 2012) ("Probable cause 'is a complete defense

to an action for false arrest.'" (quoting *Weyant*, 101 F.3d at 852)); *Jenkins v. City of New York*,

478 F.3d 76, 86–87 (2d Cir. 2007) (same).

　　　An officer has probable cause when he or she has "reasonably trustworthy information as

to [ ] facts and circumstances that are sufficient to warrant a person of reasonable caution in the

belief that an offense has been . . . committed by the person to be arrested." *Ackerson*,

702 F.3d at 19 (alterations in original) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir.

2007)).  This determination is made from the perspective of the arresting officer at the time of

arrest.  *See id.* ("In deciding whether probable cause existed for an arrest, we assess 'whether the

facts known by the arresting officer at the time of the arrest objectively provided probable cause

to arrest.'" (quoting *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006))); *Vazquez*, 2013 WL

5519981, at *6 ("To determine whether probable cause exists, 'courts must consider those facts

available to the officer at the time of the arrest and immediately before it . . . .'" (quoting *Panetta*

*v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006))).  A district court should consider the totality of

the circumstances in determining the existence of probable cause.  *Stansbury v. Wertman*, 721

F.3d 84, 92 (2d Cir. 2013) ("[T]he district court erred insofar as it did not account for the

evidence 'on the totality of the circumstances.'" (quoting *Jenkins*, 478 F.3d at 90)); *Vaszquez*,

2013 WL 5519981, at *6 ("Courts must examine the 'totality of the circumstances' and 'be

aware that probable cause is a fluid concept . . . .'" (quoting *Caldarola v. Calabrese*, 298 F.3d

156, 162 (2d Cir. 2002))).

"A law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Fabrikant v. French*, 691 F.3d 193, 216 (2d Cir. 2012) (bracket omitted) (quoting *Panetta*, 460 F.3d at 395). "The most common situation in which such doubts arise is when there exists a prior relationship between the victim and the accused that gives rise to a motive for a false accusation." *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998); *see also Hart v. City of New York*, No. 11-CV-4678, 2013 WL 6139648, at *5 (S.D.N.Y. Nov. 18, 2013) ("It is true that where a 'bitter prior relationship exists' . . . a complaint from the complaining victim alone may not be enough to constitute probable cause . . . .'" (quoting *Sankar v. City of New York*, 867 F. Supp. 2d 297, 306 (E.D.N.Y. 2012))); *Morris v. City of New York*, No. 12-CV-3959, 2013 WL 5781672, at *5 (E.D.N.Y. Oct. 28, 2013) ("Of course, some purported victims of crimes may have axes to grind, and certain preexisting relationships between the victim and the accused can raise doubts as to the victim's veracity." (citing *Mistretta*, 5 F. Supp. at 133)); *Sankar*, 867 F. Supp. at 306 (noting that prior relationships which give rise to a motive for false accusation raise doubts as to a witness' veracity); *Brodie v. Fuhrman*, No. 07-CV-4212, 2010 WL 1189347, at *6 (E.D.N.Y. Mar. 29, 2010) (same); *Drummond v. Castro*, 522 F. Supp. 2d 667, 675 (S.D.N.Y. 2007) ("Police do not cite any evidence of a prior relationship between the witness and Plaintiff that would tend to suggest a hidden motive on the part of the witness or cast doubt on the witness' veracity.").

"When such a relationship exists, and is known to the arresting officer before the arrest is made, the complaint alone may not constitute probable cause; the officer may need to investigate further." *Mistretta*, 5 F. Supp. at 133. While the victim's account need not be completely ignored, "the police [must] have additional information to buttress the victim's statement."

8

*Holloway v. Joseph*, No. 10-CV-6470, 2013 WL 3816534, at *3 (W.D.N.Y. July 22, 2013)

(citing *Williams v. City of New York*, No. 02-CV-3693 2003 WL 22434151, at *5 (S.D.N.Y.

Oct. 23, 2003)); *see also Jovanovic v. City of New York*, No. 04-CV-8437, 2006 WL 2411541,

at *7 (S.D.N.Y. Aug. 17, 2006) ("the failure to make a further inquiry when a reasonable person

would have done so may be evidence of a lack of probable cause" (quoting *Lowth v. Town of

Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996))), *reconsidered in part on other grounds*, 2008

WL 355515 (S.D.N.Y. Feb. 7, 2008).  When police are aware of an ongoing relationship between

the victim and the accused there should be "independent corroborative evidence to support at

least some of the victim's assertions."  *Brodie*, 2010 WL 1189347, at *6 (quoting *Bullard v. City

of New York*, 240 F. Supp. 2d 292, 298 (S.D.N.Y. 2003)).  "A variety of circumstances might

corroborate a putative victim's veracity . . . such . . . as (1) the officer's observation of the

putative victim's physical injuries, (2) the level of detail and consistency in the putative victim's

description of events, (3) the putative victim's identification of the plaintiff by name and

physical description, and (4) incriminating statements by the plaintiff."  *Williams v. Schultz*,

No. 06-CV-1104, 2008 WL 4635383, at *9 (N.D.N.Y. Oct. 16, 2008).

"[A] claim for false arrest turns only on whether probable cause existed to arrest a

defendant . . . .  [I]t is not relevant whether probable cause existed with respect to each individual

charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest."

*Jaegly*, 439 F.3d at 154.  At the time of Plaintiff's arrest, Officer Martinez had probable cause to

arrest him for the charge of menacing in the second degree and did arrest Plaintiff for that crime.

A person is guilty of menacing in the second degree when:

He or she intentionally places or attempts to place another person in
reasonable fear of physical injury, serious physical injury or death by
displaying a deadly weapon, dangerous instrument or what appears to be a
pistol, revolver, rifle, shotgun, machine gun or other firearm . . . .

N.Y. Penal Law § 120.14(1).  Menacing in the second degree includes the display of a "dangerous instrument."  Any innocuous object can qualify as a dangerous instrument so long as "under the circumstances in which it is used, attempted to be used or threatened to be used, [it] is readily capable of causing death or other serious physical injury."  N.Y. Penal Law § 10.00(13); *see also People v. Carter*, 53 N.Y.2d 113, 116 (1981) ("[T]he statute states plainly that any 'instrument, article or substance', no matter how innocuous it may appear to be when used for its legitimate purpose, becomes a dangerous instrument when it is used in a manner which renders it readily capable of causing serious physical injury."); *People v. Warren*, 949 N.Y.S.2d 496, 498 (App. Div. 2012) (employing the "use-oriented approach" to identify dangerous instruments); *People v. Juarez*, 827 N.Y.S.2d 564, 568 (Co. Ct. 2006) (same).

Although not overwhelming, Officer Martinez did have probable cause to arrest Plaintiff for menacing in the second degree.  Officer Martinez responded to a radio run which informed him of a dispute involving a knife.  (Defs. 56.1 ¶ 4; Pl. Opp'n 56.1 ¶ 4.)  Upon arriving at the scene of the alleged crime, Officer Martinez stopped Plaintiff because he matched the description of the alleged assailant and was in the area identified in the 911 call.  (Defs. 56.1 ¶ 14; Pl. Opp'n 56.1 ¶ 14.)  After he stopped and frisked Plaintiff, (*id.*), Officer Martinez and Sergeant Termine spoke with Sedita, (Defs. 56.1 ¶ 17; Pl. Opp'n 56.1 ¶ 17).  Sedita identified himself as the complainant and Plaintiff as the subject of the complaint.  (Defs. 56.1 ¶ 15; Def. Sedita 56.1 ¶ 17; Pl. Opp'n 56.1 ¶ 17.)  Sedita also confirmed that Plaintiff threatened him while holding an object at his side in his right hand.  (Def. Sedita 56.1 ¶ 17; Pl. Opp'n 56.1 ¶ 17.)  The City argued at oral argument that at this point in the sequence of events, Officer Martinez had probable cause to arrest Plaintiff.  However, drawing all inferences in favor of Plaintiff, the Court finds that Officer Martinez learned of an ongoing contentious relationship between Plaintiff and Sedita

before arresting Plaintiff, (Defs. 56.1 ¶¶ 17–18; Pl. Opp'n 56.1 ¶¶ 17–18), and such a relationship, arguably, could have given rise to a motive for false accusation.  Because Officer Martinez learned of an ongoing contentious relationship between Sedita and Plaintiff before arresting Plaintiff, Officer Martinez had a duty to investigate further before probable cause could be established.  *See Sankar*, 867 F. Supp. at 306 ("When such a relationship exists, and is known to the officer *before the arrest is made*, the complaint alone may not constitute probable cause" and "the officer may need to investigate further." (quoting *Mistretta*, 5 F. Supp. at 133 (emphasis added))).

Here, the evidence, when viewed in the light most favorable to Plaintiff, shows that further investigation did take place.  Instead of arresting Plaintiff immediately upon confirming that he was the subject of the complaint, Officer Martinez searched Plaintiff and recovered an ink pen from Plaintiff's right coat pocket.  (Defs. 56.1 ¶ 19; Pl. Opp'n 56.1 ¶19.)  The ink pen served as independent corroborative evidence sufficient to buttress Sedita's veracity and solidify probable cause to arrest Plaintiff.  *See Hart*, 2013 WL 5433513, at *5 ("The officers' further inquiry and corroboration of the facts are sufficient to dispel concerns about . . . veracity."); *Brodie*, 2010 WL 1189347, at *6 ("[E]ven if a prior relationship exists, when a 'victim precisely identifies the alleged perpetrator of a crime and there is independent corroborative evidence to support at least some of the victim's assertions, a person of reasonable caution is warranted in believing that an offense has been committed by the alleged perpetrator.'" (quoting *Bullard*, 240 F. Supp. at 298)).

In arguing against probable cause, Plaintiff makes several arguments concerning the trustworthiness of both Sedita and Officer Martinez, each of which is insufficient to create a triable issue of material fact.  First, Plaintiff asserts that the factual dispute surrounding Sedita's

statements demonstrates that his veracity was "immediately questionable," thereby precluding probable cause to arrest.  (*See* Pl. Opp'n Mem. 17.)  Whether Sedita told the 911 dispatcher, and later Officer Martinez, that Plaintiff had a knife is a factual dispute, however, it is immaterial to the issue of whether Officer Martinez had probable cause to arrest Plaintiff at the time of the incident because even if Sedita only told Officer Martinez that he was threatened with an object, such a statement is fully consistent with a finding of probable cause for menacing in the second degree.[3]

Second, Plaintiff argues that Officer Martinez's account of Sedita's statements cannot be believed because Officer Martinez failed to contemporaneously record such statements in his memo book.  (*Id.*; Martinez Dep. at 16:2–13.)  Although such a record would further support Officer Martinez's account, his failure to record Sedita's statements is insufficient to create a triable issue of material fact.  *Cf. Warren v. Keane*, No. 92-CV-8626, 1994 WL 62845, at *1 (S.D.N.Y. Feb. 22, 1994) (Finding "[t]he absence of an official written probable cause finding" to not be "fatal" in the context of a Section 1983 prisoner's suit concerning allegedly unlawful searches).  Plaintiff has cited to no case that credits the absence of a memo book entry as supportive of a finding that an officer's testimony cannot be believed or that the officer lacked probable cause to arrest.  *But see Brandon v. City of New York*, 705 F. Supp. 2d 261, 274 (S.D.N.Y. 2010) (recognizing that an officer's memo book entry which corroborates a plaintiff's allegations can help overcome the presumption of probable cause attached to grand jury

---

[3]  Plaintiff argues that "an ink pen is not a 'deadly weapon' as defined under the New York penal code, and a charge of menacing in the second degree was not supported by the facts available to [Officer] Martinez at the time of [P]laintiff's arrest."  (Pl. Opp'n Mem. 22.)  Plaintiff ignores the fact that a pen could qualify as a "dangerous instrument" which could sustain a charge of menacing in the second degree.  *See People v. Carter*, 53 N.Y.2d 113, 116 (1981) (finding that any object can qualify as a dangerous instrument for purposes of menacing in the second degree).

indictments).  Moreover, the Court does not solely rely on Officer Martinez's account of the facts to find probable cause, lessening any negative inference that may arise from his failure to contemporaneously record Sedita's statements.

Third, Plaintiff argues that for a variety of reasons — including the discrepancy between Sedita's 911 call and statements at the scene — that Officer Martinez did not believe he had probable cause to arrest.  However, an officer's subjective belief is immaterial to the Court's probable cause inquiry.  *See Torraco v. Port Auth. of New York & New Jersey*, 615 F.3d 129, 139 (2d Cir. 2010) ("[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest, i.e., it is objective rather than subjective." (internal citation and quotation omitted)); *Curry v. Lynch*, 323 F. App'x 63, 65 (2d Cir. 2009) ("The subjective beliefs of [defendant police officer] are wholly irrelevant to the question of whether probable cause justified [plaintiff]'s arrest." (citing *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007))).

Finally, Plaintiff argues that his immediate denials of the alleged crime created further doubt as to Sedita's veracity.  (*Id.*)  However, conflicting accounts between a complainant and the accused do not negate probable cause.  *See Koester v. Lanfranchi*, 288 F. App'x 764, 766 (2d Cir. 2008) ("[A]n officer is not required to eliminate every possible line of impeachment . . . even when a police officer is presented with different stories from an alleged assault victim and the accused assailant." (citation omitted) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)); *Awelewa v. New York City*, No. 11-CV-778, 2012 WL 601119, at *3 (S.D.N.Y. Feb. 23, 2012) ("Even in a case where the police are presented with competing accounts from the victim complainant and the accused, the 'police do not have to disprove [the] accused's claim of innocence to rely on [the] victim's account as probable cause for arrest.'" (quoting *Koester*, 288

F. App'x. at 767)); *Jitta v. Polstein*, No. 09-CV-2868, 2011 WL 4073926, at *7 (E.D.N.Y. Sept. 13, 2011) ("Conflicting accounts between the victim and the arrestee do not vitiate a finding of probable cause." (citing *Curley*, 268 F.3d at 70)).

Under the totality of the circumstances, Officer Martinez had probable cause to arrest Plaintiff. Drawing all inferences in favor of Plaintiff, Sedita told Officer Martinez at the scene that Plaintiff, while holding an object in his right hand, threatened Sedita. Officer Martinez did not immediately record Sedita's statement, instead, Officer Martinez searched Plaintiff several times and recovered a pen from Plaintiff's right coat pocket. Although Officer Martinez knew of a prior contentious relationship between Plaintiff and Sedita, Sedita's complaint was reasonably trutworthy and corroborated by physical evidence thereby constituting probable cause to arrest Plaintiff. This is so, despite Plaintiff's immediate claims of innocence and any discrepancy between Sedita's statements to the 911 operator and Officer Martinez.

Although the question of probable cause is indeed close, viewing the evidence in the light most favorable to Plaintiff and examining the totality of the circumstances, the Court finds that Officer Martinez had probable cause to arrest Plaintiff. Moreover, even if the Court were to find probable cause lacking, it would at least find arguable probable cause to arrest, which entitles Officer Martinez to qualified immunity. *See infra* Part II.c. The Court grants Officer Martinez's motion for summary judgment as to Plaintiff's false arrest claim.

### ii. Malicious Prosecution

"To prevail in an action for malicious prosecution under New York law, [a plaintiff] must show: '1) the initiation of an action by the defendant against [him], 2) begun with malice, 3) without probable cause to believe it can succeed, 4) that ends in failure or, in other words, terminates in favor of the plaintiff.'" *McCaul v. Ardsley Union Free Sch. Dist.*, 514 F. App'x 1,

6 (2d Cir. 2013) (citing *Engel v. CBS, Inc.*, 145 F.3d 499, 502 (2d Cir. 1998)); *see also Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997); *Levy v. Town of N. Hempstead*, No. 12-CV-1777, 2013 WL 5276559, at *5 (E.D.N.Y. Sept. 18, 2013) (stating the elements of a malicious prosecution claim); *Hayward v. City of New York*, No. 12-CV-3220, 2013 WL 4775642, at *4 (E.D.N.Y. Sept. 6, 2013) (same).  In addition, a plaintiff must show a "sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rutigliano v. City of New York*, 326 F. App'x 5, 8–9 (2d Cir. 2009) (quoting *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)).  While Officer Martinez concedes that Plaintiff has shown the initiation of a proceeding against him and its termination in Plaintiff's favor, Officer Martinez argues that Plaintiff cannot establish the lack of probable cause or a showing of malice, thus warranting summary judgment in his favor.  (*See* Defs. Mem. 6.)

### 1.  Probable Cause

Probable cause is a complete bar to a claim of malicious prosecution.  *Smith v. Tobon*, 529 F. App'x at 38 (citing *Savino*, 331 F.3d at 72); *Husbands v. City of New York*, 335 F. App'x. 124, 128 (2d Cir. 2009).  "Once probable cause to arrest has been established, claims of malicious prosecution survive only if, between the arrest and the initiation of the prosecution, 'the groundless nature of the charges [is] made apparent by the discovery of some intervening fact.'" *Tobon*, 529 F. App'x at 38 (quoting *Lowth*, 82 F.3d at 571); *see also Jitta*, 2011 WL 4073926, at *8 (finding that probable cause to arrest precludes a malicious prosecution claim unless "following the arrest but prior to initiating prosecution, learned of facts that would negate his earlier determination of probable cause" (quoting *Pierre v. City of New York*, No. 05-CV-5018, 2007 WL 2403573, at *10 (E.D.N.Y. Aug. 17, 2007))).

There is no evidence in the record to suggest that Officer Martinez learned of any facts that would negate his earlier determination of probable cause. Absent such evidence, the District Attorney's decision to prosecute the case precludes liability on the part of Officer Martinez. *See Nickey v. City of New York*, No. 11-CV-3207, 2013 WL 5447510, at *8 (E.D.N.Y. Sept. 27, 2013) ("[A]rresting officers generally are not subject to liability for malicious prosecution because the ultimate decision to prosecute rests with the prosecutor."); *Myers v. Cnty. of Nassau*, 825 F. Supp. 2d 359, 367 (E.D.N.Y. 2011). After arresting Plaintiff, Officer Martinez spoke with the ADA and relayed the information Sedita had given him in order to draft the criminal complaint. (Defs. 56.1 ¶¶ 24–25; Pl. Opp'n 56.1 ¶¶ 24–25.) Officer Martinez had no further involvement with Plaintiff's prosecution. (Defs. 56.1 ¶ 27; Pl. Opp'n 56.1 ¶ 27.) Based on the foregoing undisputed facts, Officer Martinez's probable cause determination was not negated by any subsequent fact.[4] *See Lowth*, 82 F.3d at 571 ("In order for probable cause to dissipate, the

---

[4] Plaintiff argues that a jury could find that Officer Martinez "essentially made up the claim that plaintiff had threatened Sedita with an ink pen." (Pl. Opp'n Mem. 25.) This claim is properly understood as a denial of the right to a fair trial based on fabrication of evidence, separate and distinct from Plaintiff's claim of malicious prosecution. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) ("No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee."). "[A] police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.'" *Id.* (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976)). Courts in this circuit have recognized such claims and have also noted that probable cause is no defense. *See Morse v. Spitzer*, No. 07-CV-4793, 2012 WL 3202963, at *3 (E.D.N.Y. Aug. 3, 2012) ("The analysis in *Ricciuti* unambiguously treated the plaintiffs' claims for malicious prosecution and denial of the right to a fair trial as two independent constitutional claims, with only the malicious prosecution claim being subject to a probable cause defense."); *Deskovic v. City of Peekskill*, 894 F. Supp. 2d 443, 452 (S.D.N.Y. 2012) ("Unlike a malicious prosecution claim, a fabrication of evidence claim cannot be defeated by the defendant's demonstration of probable cause.") To establish a fair trial claim, a plaintiff must show that a police officer "creates false information likely to influence a jury's decision and forwards that information to prosecutors." *Ricciuti*, 124 F.3d at 130. Here, although at his deposition in this proceeding

16

groundless nature of the charges must be made apparent by the discovery of some intervening fact." (citing *Callan v. State*, 535 N.Y.S.2d 590 (1988))).  Because probable cause is a complete defense to a malicious prosecution claim, Officer Martinez is entitled to summary judgment.

### 2.  Malice

The Court also finds that Plaintiff fails to show actual malice as required under New York law.  "[M]alice may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff."  *Manganiello v. City of New York*, 612 F.3d 149, 160 (2d Cir. 2010) (internal quotation marks omitted).  Plaintiff argues that the record shows that Officer Martinez operated with reckless disregard as to the facts and was intent on ensuring prosecution regardless of the weakness of the facts.  (*See* Pl. Opp'n Mem. 22.)  To support his argument, Plaintiff reiterates that an ink pen is not a "deadly weapon" under New York penal law.  (*Id.*)  The Court has already addressed the error of this argument.  *See supra* Part II.b.i.  Plaintiff further argues that charging menacing and harassment in the second degree was in reckless disregard of all available facts.  (*See* Pl. Opp'n Mem. 22.)  Contrary to Plaintiff's broad assertion, the Court finds that there was probable cause to arrest him for menacing in the second degree.  Absent other evidence of actual malice, Plaintiff has failed to show that there is a triable issue of fact with respect to the malice prong of his malicious prosecution claim.  *See King v. City of New York*,

Sedita was uncertain as to his statements to Officer Martinez at the scene, Sedita's affidavit shortly after the incident confirmed Officer Martinez's recollection of the incident.  Viewing the evidence in the light most favorable to Plaintiff, Sedita's deposition statements suggest a witness who, over time, has become less able to recall the specifics of the incident.  Moreover, it is undisputed that Officer Martinez recovered a pen from Plaintiff.  Thus, on the facts of this case, even if Plaintiff had brought a claim for denial of the right to a fair trial based on fabricated evidence, such a claim would likely fail because a reasonable jury could not find that Officer Martinez created false information.

No. 12-CV-2344, 2013 WL 2285197, at *7 (E.D.N.Y. May 23, 2013) ("Defendants cannot be

found to have acted with malice without further pleading that they lacked probable cause.").  The

Court grants Officer Martinez's motion for summary judgment.

### c.  Qualified Immunity

The Court also finds that Officer Martinez is entitled to summary judgment on the basis

of qualified immunity.  (Defs. Mem. 9.)  "[G]overnment officials performing discretionary

functions generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known."  *Negron v. City of New York*, No. 09-CV-0944, 2013 WL 5525692, at *4

(E.D.N.Y. Oct. 4, 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also*

*Dowling v. City of New York*, No. 11-CV-4954, 2013 WL 5502867, at *7 (E.D.N.Y. Sept. 30,

2013) (noting that qualified immunity protects officials performing discretionary functions from

liability for civil damages so long as their conduct does not violate a clearly established right

(citing *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010))).  To determine whether

qualified immunity attaches, the Court must determine: "(1) whether plaintiff has shown facts

making out [a] violation of a constitutional right; (2) if so, whether that right was 'clearly

established'; and (3) even if the right was 'clearly established,' whether it was 'objectively

reasonable' for the officer to believe the conduct at issue was lawful."  *Gonzalez v. City of*

*Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (citing *Taravella*, 599 F.3d at 133–34).

As already discussed, the Court finds that Officer Martinez had probable cause to arrest

Plaintiff, therefore Plaintiff has shown no violation of a constitutional right.  *See supra* Part II.b.

Assuming *arguendo*, that Officer Martinez did not have probable cause to arrest Plaintiff, the

first and second prongs of the qualified immunity inquiry are satisfied: (1) an arrest without

18

probable cause is a violation of a constitutional right, and (2) that right was clearly established at the time of Plaintiff's arrest.  *See Jenkins*, 478 F.3d at 86–87 ("There is no doubt that the right to be free from arrest without probable cause was clearly established . . . ."); *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (collecting cases).  Therefore, whether Officer Martinez is entitled to qualified immunity depends on whether his probable cause determination was objectively reasonable.  *See Gonzalez*, 728 F.3d at 157.  The Second Circuit has recognized that an officer's probable cause determination is objectively reasonable if there was "arguable" probable cause at the time of arrest, "that is, if officers of reasonable competence could disagree on whether the probable cause test was met."  *Id.* (citing *Jenkins*, 478 F.3d at 86–87) (internal quotation marks omitted); *see also Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013) ("Even where a reviewing court . . . concludes that probable cause to arrest was lacking in a given case, an officer will still be entitled to qualified immunity . . .  if he can establish that there was arguable probable cause to arrest.").

"Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004); *see also Tabor v. New York City*, No. 11-CV-195, 2013 WL 4775608, at *6 (E.D.N.Y. Sept. 6, 2013); *Powell v. Murphy*, No. 11-CV-2561, 2013 WL 4735692, at *5 (E.D.N.Y. Sept. 3, 2013). "In this respect, the qualified immunity test is more favorable to the officers than the one for probable cause."  *Ackerson*, 702 F.3d at 21 (internal quotation and citation omitted).  However, "'[a]rguable' probable cause should not be misunderstood to mean 'almost' probable cause . . . . If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not

immunize the officer." *Gonzalez*, 728 F.3d at 157 (quoting *Jenkins*, 478 F.3d at 86–87).

Officer Martinez argues that he is entitled to qualified immunity, in part, because he arrested Plaintiff pursuant to an order of a superior officer, Sergeant Termine.  (*See* Defs. Mem. 10; Defs. Reply 7.)  Officer Martinez argues that superiors are held to a higher standard of legal knowledge and cites to *Charles v. Maul*, 214 F.3d 350, 360 (2d Cir. 2000), for support. *Charles* is inapposite.  *Charles* discussed the "higher standard of legal knowledge" expected of superior officers in the context of assessing whether the federal right violated was "clearly established."  *See Charles*, 214 F.3d at 360 ("But whether qualified immunity applies depends on whether the right violated was clearly established.  Higher-ranking officials, as is the case here, are held to a higher standard of legal knowledge than are their subordinates." (citation omitted)). As discussed above, the right to be free from arrest without probable cause was clearly established at the time of Plaintiff's arrest.

While reliance on a superior's orders does not entitle an officer to qualified immunity, it is taken into consideration when assessing whether it was objectively reasonable for an officer to believe that the conduct at issue was lawful.  *See Anthony v. City of New York*, 339 F.3d 129, 138 (2d Cir. 2003) ("Plausible instructions from a superior or fellow officer *support* qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists . . . ." (emphasis added) (citing *Bilida v. McCleod*, 211 F.3d 166, 174–75 (1st Cir. 2000))).  Thus, an officer's decision to arrest must be objectively reasonable in light of all the surrounding circumstances, including reliance on a superior's orders.  *See Brandon v. City of New York*, 705 F. Supp. 2d 261, 271 (S.D.N.Y. 2010) (finding that two officers were entitled to qualified immunity when they relied on another officer's call to arrest, in addition to their personal

20

observations of the putative victim's failure to respond to police orders); *Kraft v. City of New York*, 696 F. Supp. 2d 403, 420 (S.D.N.Y. 2010), *aff'd*, 441 F. App'x 24 (2d Cir. 2011) (recognizing that instructions or orders from a superior officer can support qualified immunity when such instructions or orders are "apparently valid"); *Heicklen v. Toala*, No. 08-CV-2457, 2010 WL 565426, at \*5 (S.D.N.Y. Feb. 18, 2010) ("Additionally, police officers are shielded from liability if they reasonably rely on a superior officer's plausible orders, whi*ch viewed under all the circumstances*, could lead an officer to conclude that probable cause exists." (emphasis added)), *aff'd sub nom. Heicklen v. Kelly*, 409 F. App'x 457 (2d Cir. 2011).

Viewing the evidence in the light most favorable to the Plaintiff, Officer Martinez had, *at least*, arguable probable cause to arrest. Officer Martinez was told at the scene that Sedita had been threatened with an object that Plaintiff held in his right hand and, after a search, or after multiple searches, a pen was recovered from the right pocket of Plaintiff's coat. Plaintiff argues that because only a pen was recovered, Officer Martinez lacked probable cause to arrest Plaintiff for the threatened use of a deadly weapon. (*See* Pl. Opp'n Mem. 24.) Although a pen is not a deadly weapon, it could qualify as a dangerous instrument. *See People v. Ross*, 951 N.Y.S. 2d 88 (App. Term 2012) ("The court was warranted in finding the pen to be a dangerous instrument . . . ."); *In re Markquel S.*, 940 N.Y.S.2d 247 (App. Div. 2012) (finding that a pencil constituted a dangerous instrument when used to repeatedly stab the victim); *People v. Molnar*, 652 N.Y.S.2d 186 (1996) ("[W]e conclude that the pen and pencil constituted dangerous instruments because they were used 'in a manner which render[ed them] readily capable of causing serious physical injury . . . .'" (second alteration in original) (citations omitted)). As it happens, under New York

Law, the pen can indeed be mightier than the sword.[5]  Consequently, the Court finds that officers of reasonable competence could disagree as to whether Plaintiff's pen was used in such a way as to constitute a dangerous instrument and whether Plaintiff intentionally used or attempted to use his pen-turned-dangerous instrument in such a way as to place Sedita in reasonable fear of physical injury.

Plaintiff also argues that he told Officer Martinez that Sedita's story was false and that reasonable jurors could conclude that Officer Martinez "essentially made up the claim that [P]laintiff had threatened Sedita with an ink pen."  (Pl. Opp'n Mem. 25.)   The Court has already addressed and rejected these arguments.  Because reasonable officers could disagree as to the existence of probable cause, the Court finds that Officer Martinez is entitled to qualified immunity.

### d.  State Law Claims

"District courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (citations and internal quotation marks omitted); *see also One Communications Corp. v. J.P. Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims"); *Sullivan v. City of New York*,

---

[5]  *See* EDWARD BULWER-LYTTON, RICHELIEU: OR THE CONSPIRACY 52 (Harper & Brothers 1839).

No. 10-CV-0038, 2011 WL 3806006, at *6 (S.D.N.Y. Aug. 29, 2011) ("where federal claims are dismissed before trial, the state [claims] should be dismissed as well." (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998)).  The Court declines to exercise supplemental jurisdiction over the remaining state law claims.  Plaintiff's state law claims are therefore dismissed without prejudice.

## III.  Conclusion

The Court grants Officer Martinez's motion for summary judgment as to the false arrest and malicious prosecution claims and dismisses all state law claims against Sedita without prejudice.

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge


Dated:  January 31, 2014
        Brooklyn, New York